UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X
JESUS FUENTES,

                    Petitioner,          <u>MEMORANDUM & ORDER</u>
                                         04-CV-0737(JS)

        -against-

SUPERINTENDENT, Great Meadow
Correctional Facility,

                    Respondent.
------------------------------X

Appearances:
For Petitioner:          Jesus Fuentes, <u>pro</u> <u>se</u>
                         #98-A-4737
                         Clinton Correctional Facility
                         P.O. Box 2001
                         Dannemora, NY 12929

For Respondent:          Thomas J. Spota, Esq.
                         District Attorney of Suffolk County
                         Criminal Courts Building
                         200 Center Drive
                         Riverhead, New York 11901
                         By: ADA Michael Blakey

SEYBERT, District Judge:

        Petitioner, Jesus Fuentes ("Fuentes" or "Petitioner"),

proceeding <u>pro</u> <u>se</u>, petitions the Court for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  For the following reasons, Fuentes's

petition is denied in its entirety.

<u>FACTS AND PROCEDURAL HISTORY</u>

        On the evening of September 2, 1996, Petitioner broke

into K.R.'s home and brutally assaulted her while she slept.

(Resp. Ans. ¶¶ 2, 3.)  Then, after K.R. was unconscious, Petitioner

sexually assaulted her. (Id. at ¶ 3.) Several days after, he was arrested on a traffic warrant. (App. to Pet. Mem. at 6.) Pursuant to a search incident to the traffic arrest, the police discovered property, specifically, foreign coins similar to the coins taken from K.R.'s home. (See id.) After a search warrant was issued, police found a pawn shop receipt in Petitioner's home. (Id. at 7.) The jewelry pawned was identified as the jewelry stolen from K.R., and the pawn shop owner identified the Petitioner as the individual who pawned the jewelry. (See id. at 7.)

Petitioner was charged for one count of Rape in the First Degree, one count of Sodomy in the First Degree, one count of Burglary in the First Degree, one count of Criminal Possession of Stolen Property in the Third Degree, and two counts of Assault in the Second Degree. (Supp. App. Vol. I at 8-12.) After Petitioner was indicted by the grand jury on all counts on September 20, 1996, the Assistant District Attorney filed a motion for exemplars for Petitioner's head and pubic hair, saliva, and blood. (Resp. Ans. ¶¶ 7, 8.) The Petitioner's DNA matched the DNA found on K.R.'s bedsheet. (Pet. Mem. at 6.) After a trial in the Supreme Court, Suffolk County, Petitioner was convicted on all counts in the indictment. (Resp. Ans. ¶¶ 1, 89.) On July 30, 1998, he was sentenced to an aggregate term of 46 5/6 to 96 years in prison. (Pet. Mem. at 9.)

On March 8, 1999, the Appellate Division, Second Department denied Petitioner's Article 78 petition seeking mandamus to compel the trial court to hold a post-conviction Hughes-Tunstall hearing. Fuentes v. Cacciabaudo, 259 A.D.2d 546, 546, 686 N.Y.S.2d 482 (2d Dep't 1999). Subsequently, on November 15, 1999, the Suffolk County Court denied Petitioner's motion to vacate judgment, in which Petitioner alleged that his constitutional rights were violated because he was denied a Hughes-Tunstall hearing. (Supp. App. Vol. II at 483-84.) Thereafter, on March 27, 2000, the Appellate Division, Second Department denied Petitioner's pro se motion for leave to appeal. (Supp. App. Vol. III at 515.) On January 28, 2002, the Appellate Division, Second Department, affirmed the conviction, but modified the sentence. People v. Fuentes, 290 A.D.2d 563, 563, 737 N.Y.S.2d 106 (2d Dep't 2002). The sentences on the assault counts were modified to run concurrently instead of consecutively, substantially reducing the Petitioner's sentence. See id. In affirming the conviction, the Second Department rejected Petitioner's arguments that the verdict was against the weight of the evidence, and found that the trial court's failure to give a circumstantial evidence charge was harmless. See id. at 564. Further, the Court found the Petitioner's remaining arguments, which included that the Petitioner was denied his right to a hearing concerning post-

hypnotic testimony from the victim, to be unpreserved or without merit. Id.; (Supp. App. Vol. III at 602.) On May 20, 2002, the New York Court of Appeals denied Petitioner's leave to appeal the Second Department's Order. People v. Fuentes, 98 N.Y.2d 650, 772 N.E.2d 612, 745 N.Y.S.2d 509 (2002). Finally, on February 24, 2003, the United States Supreme Court denied Fuentes's pro se petition for writ of certiorari. (Supp. App. Vol. III at 727.)

On February 20, 2004, Petitioner filed this application for a writ of habeas corpus alleging that (1) the trial court's failure to establish acceptable boundaries of admissible pre-hypnotic and inadmissable post-hypnotic testimony prevented the Petitioner from effectively cross-examining K.R.; (2) the Petitioner was denied his right to protection from double jeopardy when he was convicted of two identical counts of assault in the second degree; (3) the conviction was obtained in violation of the Petitioner's right to a fair trial because (a) the Petitioner's ability to cross-examine a detective was hindered; (b) the trial court coerced a verdict from the jury when it failed to grant the jury's request for a continuance; and (c) the trial court failed to respond appropriately to the jury's questions regarding the need for two assault charges; (4) trial counsel did not provide Petitioner with effective assistance; and (5) Petitioner's rights to due process were violated because his guilt cannot be proven

beyond a reasonable doubt.  On July 8, 2008, Petitioner moved to amend his habeas petition to add three new grounds: (6) his Constitutional right to due process was violated when the New York State courts denied his claim under state law for post-conviction DNA testing of a hair found in the rape victim's pubic combing; (7) the prosecution committed misconduct in purportedly leading Petitioner's trial counsel to believe that DNA analysis had been done; (8) this purportedly "new" evidence provides a gateway for the Court to review the merits of Petitioner's defaulted or barred claims.  In addition, Petitioner sought to amend ground (4), his ineffective assistance of counsel claim, to argue that Petitioner's counsel was ineffective in failing to submit the hair for DNA testing.

<u>DISCUSSION</u>

I.  <u>Federal Habeas Review of State Convictions</u>

Petitioner filed this action after the April 24, 1996, effective date of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Accordingly, AEDPA's provisions apply to his case.  <u>Williams v. Taylor</u>, 529 U.S. 362, 402, 120 S. Ct. 1479, 1518, 146 L. Ed. 2d 389 (2000).  Under the provisions of 28 U.S.C. § 2254(d), a habeas corpus application must be denied unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This deferential review is applied as long as the "federal claim has been 'adjudicated on the merits' by the state court." <u>Cotto v. Herbert</u>, 331 F.3d 217, 231 (2d Cir. 2003).  "A state court adjudicates a petitioner's federal constitutional claims on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." <u>Norde v. Keane</u>, 294 F.3d 401, 410 (2d Cir. 2002) (internal citations and quotations omitted).

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." <u>Howard v. Walker</u>, 406 F.3d 114, 122 (2d Cir. 2005) (internal citations and quotations omitted).  A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in" a Supreme Court case, or it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [their] precedent." <u>Penry v. Johnson</u>, 532 U.S. 782, 792, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001) (internal quotations and citations

omitted).  A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." <u>Penry</u>, 532 U.S. at 792.  Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather that application must also be unreasonable." <u>Williams</u>, 529 U.S. at 411.

"[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). As a result, Petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." <u>Id.</u> This is "particularly important when reviewing the trial court's assessment of witness credibility." <u>Cotto</u>, 331 F.3d at 233 (internal citations and quotations omitted).

## II.  Rights Under the Confrontation Clause

Petitioner asserts that the trial court failed to protect his Sixth Amendment right during cross-examination of the victim because (1) the trial court did not hold an appropriate hearing to assess the boundaries of the admissible pre-hypnotic testimony offered by the victim and (2) the trial court failed to permit adequate cross-examination of a detective. (Pet. Mem. at 11, 21.)

The Court considers each issue in turn.

A.    Cross-examination of Victim

Following the advice of her therapist, the victim sought hypnotherapy. (Supp. App. Vol. II at 255.) Subsequently, without any involvement from law enforcement authorities, the victim participated in one therapeutic session of hypnosis on July 31, 1997. (Supp. App. Vol. I at 238.) The trial court granted Petitioner's motion for a pre-trial hearing pursuant to People v. Hughes, 59 N.Y.2d 523, 453 N.E.2d 484, 466 N.Y.S.2d 255 (1983) and People v. Tunstall, 63 N.Y.2d 1, 468 N.E.2d 30, 479 N.Y.S.2d 192 (1984). (Supp. App. Vol. II at 262-64.) The purpose of a Hughes-Tunstall hearing is to determine "the extent of the witness's prehypnotic recollection (which would establish the boundaries of admissible testimony) and whether the hypnosis was so impermissibly suggestive as to require exclusion of in-court testimony with respect to such prehypnotic recollection." Hughes, 59 N.Y.2d at 546.

Petitioner argues that the trial court refused to implement its order granting a Hughes-Tunstall hearing. (Pet. Mem. at 12.) However, the judge heard arguments regarding the issue. (App. Pet. Mem. at 14-30.) The trial court held that there would be no identification testimony from the victim, and in addition she would only be allowed to testify to what she had said prior to

8

undergoing hypnosis. (Id. at 25-26.) Any testimony would be limited by the court specifically to pre-hypnotic recollections consistent with investigatory statements and grand jury testimony made before the hypnosis. (Id. at 25-28.) Consequently, because there was no need, the trial court declined to hear witness testimony about the hypnotherapy session or the possible effects it may have had on the victim's memory. (Resp. Mem. at 2.) The trial court allowed, however, for this issue to be revisited if the need arose. (App. Pet. Mem. at 30.) During the trial, the victim testified to encounters she had with Petitioner prior to the crime that defense counsel had no prior notice about. (Resp. Mem. at 3-4.) The trial court held not only that these memories of the victim existed prior to the hypnotherapy, but that they also had not been produced or enhanced by the hypnosis. (Resp. Mem. at 2-4.)

The deferential standard to the state courts established in AEDPA must be applied here because this claim was adjudicated on the merits. In the Article 78 proceeding, the Second Department held the Petitioner was not entitled to a Hughes-Tunstall hearing. See Fuentes v. Cacciabaudo, 259 A.D.2d 546, 546 (2d Dep't 1999). Petitioner has failed to provide sufficient support that this decision was "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme

Court."  28 U.S.C. § 2254(d).

The Federal law at issue is whether Petitioner's right to cross-examine a witness was impeded.  "The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.'"  <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 678, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986).  "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination."  <u>Davis v. Alaska</u>, 415 U.S. 308, 315-16, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974).  To find post-hypnotic testimony admissible, the party seeking to introduce this testimony must demonstrate "by clear and convincing proof that the testimony of the witness as to his or her prehypnotic recollection will be reliable and that there has been no substantial impairment of the defendant's right of cross-examination."  <u>Hughes</u> at 547.

There is no Supreme Court precedent that supports the Petitioner's assertion that he was either entitled to a Hughes-Tunstall hearing or that K.R.'s testimony was inadmissable. Although the Confrontation Clause guarantees Petitioner the right to confront the witnesses against him, he is only guaranteed "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."  <u>Delaware v. Fensterer</u>, 474 U.S. 15, 20, 106

S. Ct. 292, 295, 88 L. Ed. 2d 15 (1985). In the Supreme Court's sole decision regarding the admissibility of post-hypnotic testimony, it held that Arkansas' <u>per se</u> rule prohibiting the admission of all hypnotically enhanced testimony improperly infringed upon a criminal defendant's right to testify on his own behalf. See <u>Rock v. Arkansas</u>, 483 U.S. 44, 61, 107 S. Ct. 2704, 2714, 97 L. Ed. 2d 37 (1987). The Court's holding was limited to defendants' testimony, and does not concern the testimony of witnesses against the defendant. <u>See</u> <u>id.</u> Thus, there is no "clearly established Federal law, as determined by the Supreme Court" that prohibited K.R.'s testimony or entitled Petitioner to greater cross-examination rights than the trial court afforded him. 28 U.S.C. § 2254(d)(1).

Even accepting Petitioner's argument that K.R.'s testimony violated Petitioner's right of confrontation, it was harmless error. "A violation of a defendant's confrontation rights does not standing alone, require reversal of a judgment of conviction. Rather, violations of the Confrontation Clause are subject to harmless error analysis." <u>Cotto v. Herbert</u>, 331 F.3d 217, 253 (2d Cir. 2003) (citing <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 684, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986)). The error is harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict," and resulted in

11

"actual prejudice." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993). Here, Petitioner's conviction was principally based upon the DNA evidence linking Petitioner to the crime, and the Petitioner's pawning of K.R.'s property – not K.R.'s testimony. (App. to Pet'r Mem. at 19-20.) Indeed, K.R.'s tesimony – even if hypnotically enhanced – failed to directly implicate Petitioner. (App. Pet'r Mem. at 22.) Thus, even if the trial court had afforded Petitioner the relief he seeks here, Petitioner still would have been convicted.

Petitioner argues that K.R. testified that "[s]omebody was sitting on top of me. And striking me to the head, just like – it felt like a palm heel strike in karate." (Pet. Mem. at 13.) Petitioner claims that, since he was the only suspect who knew karate, this statement "indirectly identified him." (<u>Id.</u>) The Court is not persuaded. But, even if the trial court erred in admitting this statement, this error was harmless because the circumstantial evidence already overwhelmingly implicated the Petitioner as the perpetrator, giving the prosecution a very compelling case even without K.R.'s post-hypnotic testimony. Thus, Petitioner's claim that his Sixth Amendment right of confrontation was violated is rejected.

B.    <u>Cross-examination of Detective</u>

Petitioner asserts he was denied his right to

confrontation when his cross-examination of Detective William Plant was limited. (Pet. Mem. at 21.) Defense counsel wanted to inquire into whether the victim's ex-husband was ruled out properly as a suspect. (Id. at 22.) Specifically, defense counsel had inquiries concerning the relationship between the ex-husband and his new wife, including allegations of domestic violence. (Id.) Defense counsel's grounds for this line of questioning was the detective's direct testimony that the ex-husband had no prior convictions and was ruled out as a suspect. (Id.) The trial court did not permit this line of questioning. (Id. at 23.)

The Sixth Amendment guarantees Petitioner's right to confront his accusers. See Delaware v. Van Arsdall, 475 U.S. 673, 678, 106 S. Ct. 1431, 1435, 89 L. Ed. 2d 674 (1986). Nevertheless, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Id. at 679. As noted above, the Confrontation Clause only guarantees an opportunity for effective cross-examination. It does not insure the defendant the cross-examination will be effective. See id. Furthermore, "[i]t is settled '[t]he scope and extent of cross-examination lies within the discretion of the trial

13

judge." <u>United States v. Scarpa</u>, 913 F.2d 993, 1018 (2d Cir. 1990).

Petitioner asserts this claim was not adjudicated on the merits, and consequently, the AEDPA standard of review is not applicable. (Pet. Mem. at 23.) However, the Petitioner raised this claim both at trial and on direct appeal. And, although the Second Department did not discuss this claim with any detail, it did remark that Petitioner's other claims are "either unpreserved for appellate review or without merit." <u>People v. Fuentes</u>, 290 A.D.2d 563, 564 (2d Dep't 2002). Thus, although terse, the Second Department apparently did adjudicate this claim on the merits, and found it to be "without merit." Accordingly, the AEDPA's more deferential standard of review applies. <u>See</u> <u>infra</u> p. 5.

Here, the trial court properly exercised its discretion. The inquiry into the ex-husband's relationship with his wife did not concern the detective's credibility. In its role of advancing the truth, cross-examination allows the jury to "observe the demeanor of the witness making his statement, thus aiding the jury in assessing credibility." <u>Lee v. Illinois</u>, 476 U.S. 530, 540, 106 S. Ct. 2056, 2062, 90 L. Ed. 2d 514 (1986). However, here, any inquiry into the ex-husband would not have tested the detective's credibility. The detective had already testified that he verified the ex-husband's alibi. Consequently, any further inquiry into the

14

relationship between the ex-husband and his current wife would have been irrelevant. In limiting the Petitioner's cross-examination of the detective, the trial court did not abuse its discretion, given that the inquiries were irrelevant and could only lead to confusing the jury. Moreover, Petitioner was not deprived of a meaningful opportunity to test the truth of the witness' direct examination. <u>Santana v. Commissioner of Correctional Services</u>, No. 02-CV-3700, 2003 WL 21459569, *4 (S.D.N.Y. 2003). Even had the trial court erred in prohibiting this line of questioning, the error was harmless because it would not have substantially influenced the jury's verdict. <u>Brecht</u>, 507 at 639. Thus, this claim is without merit.

## III. <u>Double Jeopardy</u>

Petitioner argues that he was convicted of two identical counts of assault in the second degree in violation of double jeopardy of the Fifth Amendment. (Pet. Mem. at 18.) The Double Jeopardy Clause protects against "multiple punishments for the same offense." <u>Jones v. Thomas</u>, 491 U.S. 376, 381, 109 S. Ct. 2522, 2525, 105 L. Ed. 2d 322 (1989). Here, there was sufficient evidence that supported Petitioner's guilt for consecutive sentences for both counts of assault because they were separately based on the rape and the sodomy. Notwithstanding that, the Second Department modified the Petitioner's sentence by requiring the

sentences for both assault counts to run concurrently.  <u>Fuentes</u>,
290 A.D.2d at 563.

Consequently, even if there was an initial error here, it
cannot be said that the error had a "substantial and injurious
effect" because it was later modified.  <u>Brecht</u>, 507 U.S. at 637.
For instance, in <u>Jones</u>, the Court held that the "Missouri court's
alteration of respondent's sentence to a single term for felony
murder with credit for time served provided suitable protection of
his double jeopardy rights."  491 U.S. at 387.  Similarly, by
modifying Petitioner's sentences to run concurrently, the Second
Department ensured that the Petitioner will not be punished twice,
eliminating any theoretical original violation of his double
jeopardy rights.  <u>See</u>, <u>e.g.</u>, <u>Schrier v. Iowa</u>, 941 F.2d 647, 650
(8th Cir. 1991) (holding that court does not have to address
petitioner's double jeopardy claim for habeas relief because the
sentences are concurrent).  Therefore, this claim is without merit.

IV.  <u>Right to a Fair Trial</u>

The Petitioner asserts he was deprived his fundamental
right to a fair trial as guaranteed by the Fourteenth Amendment
because (1) the cross-examination of a detective was limited; and
(2) the trial court coerced a verdict from the jury.  (Pet. Mem. at
21.)  The Court has already addressed the cross-examination of the
detective and found the trial court's actions to be proper or, at

16

worst, harmless error. Therefore, Petitioner's fair trial claims based upon the cross-examination of the detective are without merit.

Petitioner's "coercion" argument is similarly without merit. Petitioner argues the trial court coerced the verdict because (1) the jury's request for a continuance was denied; and (2) the court gave an insufficient response to the jury's question about the assault counts. (<u>See</u> Pet. Mem. at 26-29.)

With respect to (1), the jury requested not to work on the Friday before Memorial Day weekend, and instead reconvene the following Tuesday. (Pet. Mem. at 26.) The trial court denied this request, and instead instructed jurors to bring a change of clothes and their toothbrush on Friday in the event that their deliberations did not conclude. (<u>Id.</u>) These actions were not legally improper. Friday is a regularly scheduled workday, so there is nothing wrong with a court insisting that a jury deliberate then. <u>See</u> <u>United States v. Saunders</u>, 641 F.2d 659, 662 (9th Cir. 1980) (instructing jurors to continue deliberations on a hot Friday night and without a proper dinner is not coercive). Also, suggesting to the jurors that they may be sequestered is not coercive. "The period for which the jury is to be kept together is in the discretion of the trial judge." <u>United States v. Minieri</u>, 303 F.2d 550, 556 (2d Cir. 1962). Moreover, "the availability of

sequestration at a hotel for the night may be communicated to a jury so long as it is not used as a threat." <u>Frost v. Walker</u>, No. 00-CV-0028, 2002 WL 386357, *1 (E.D.N.Y. 2002). Here, there is no evidence that the trial court's instructions constituted a threat of any kind.

Petitioner also argues the trial court inappropriately responded to the jury's request to reread the assault charges and explain the difference between the two charges. (Pet. Mem. at 28.) But, even if the trial court erred here, a jury charge "is not reviewable on federal habeas corpus absent a showing that the alleged errors were so serious as to deprive defendant of a federal constitutional right." <u>United States v. Montayne</u>, 505 F.2d 1355, 1359 (2d Cir. 1974) (citing <u>Cupp v. Naughten</u>, 414 U.S. 141, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973)). Here, Petitioner has failed to demonstrate that he had any federal constitutional right to have the trial judge reread the assault charges and explain the differences between them. Thus, the Petitioner was not denied his right to a fair trial.

V.    <u>Ineffective Assistance of Counsel</u>

Petitioner argues that he was denied effective assistance of counsel as a result of his attorney's alleged cumulative errors. (Pet. Mem. at 36.) Specifically, Petitioner alleges his attorney failed to make certain motions, to object when necessary, to

investigate and use favorable evidence, and to call witnesses on behalf of Petitioner.

Under the Sixth Amendment, a criminal defendant has "the right to _effective_ assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n. 14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970). However, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. 668, 689, 104 S Ct. 2052, 2065, 2068, 80 L. Ed. 2d 674 (1984). To prevail on an ineffective assistance of counsel claim, Petitioner must demonstrate both (1) that "counsel's representation fell below an objective standard of reasonableness" measured under "prevailing professional norms," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 688, 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. at 694.

Before a federal habeas court can rule on an allegation of ineffective assistance of counsel under § 2254, each factual claim made in support of it must be fairly presented to a state court. See Rodriguez v. Hoke, 928 F. 2d 534, 538 (2d Cir. 1991).

A. Failure to Make Certain Motions

Petitioner argues that his counsel failed to make an

omnibus motion to suppress based on lack of probable cause to arrest. (Pet. Mem. at 38). Further, Petitioner alleges that, had counsel filed a proper and timely omnibus motion, he could have moved to inspect the Grand Jury minutes and suppress the DNA evidence. (Id. at 39-40.) This claim was fairly presented to the state court in the petitioner's motion to vacate judgment. (Supp. App. Vol. II at 459-60.) Thus, it is preserved for this Court to review it.

"Failure to make a meritless argument does not amount to ineffective assistance." United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999). Here, the foreign coins found on the Petitioner provided probable cause for arrest. In combination with the foreign coins, the pawn shop receipt found at the Petitioner's residence and the identification made by the jeweler were sufficient to support probable cause for taking exemplars. Accordingly, arguments made to suppress the arrest or the DNA evidence are frivolous.

B.  Failure to Object

Petitioner alleges that his attorney failed to object to the repetitive prosecution exhibits that solely proved that the crimes occurred and the inference that Petitioner stole the victim's car, an uncharged crime. (Pet. Mem. at 40-45.) Further, Petitioner argues counsel failed to timely object to the

prosecutor's improper comments in summation concerning an absence of proof establishing a prior sexual relationship between Petitioner and K.R.. (Id. at 42-43)

Counsel's decision not to object to exhibits that solely prove the crime (without connecting the crime to Petitioner) is arguably strategic. In choosing not to appear as an obstructionist, counsel made a reasonable decision not to object. The failure to object to evidence because it is repetitive is not a basis for finding constitutional error. And the failure to object to the inference that Petitioner stole K.R.'s car is, at most, harmless error. Petitioner was convicted based upon the pawn receipt and the DNA evidence, not the possible inference that he stole K.R.'s car because the car was found near his home.

C.    Failure to Investigate and Use Favorable Evidence

Petitioner also argues that counsel failed to, among other things: (1) challenge inconsistencies between the investigating detectives; (2) contend that no evidence demonstrated the pawn shop owner believed the jewelry was stolen; and (3) properly investigate the questioned hair that did not match Petitioner. (Pet. Mem. at 46-50.)

These allegations amount to nothing more than the second-guessing of counsel. But instead of second-guessing counsel's choices, this Court's review must be highly deferential. See

Strickland, 466 U.S. at 689. "It is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. Petitioner has not provided sufficient evidence that counsel's decisions here were unreasonable. On the contrary: the Petitioner's claims are frivolous. For instance, whether the pawn shop owner subjectively believed that the jewelry was stolen is irrelevant. What matters is that the evidence strongly supported a finding that the jewelry belonged to K.R., and that Petitioner pawned it. Similarly, Petitioner's counsel and the prosecutor stipulated before the jury that the hair found in K.R.'s pubic hair did not belong to Petitioner. Because the jury already knew that at least one other person's hair wound up in K.R.'s pubic area, it is speculative - at best – what counsel's further investigation of the hair could have revealed.

   D.   Failure to Call Witnesses for Petitioner

        Petitioner argues counsel failed to call certain witnesses to help his case, including K.R.'s hypnotist and guests at a party attended by both K.R. and Petitioner. As mentioned above, the decision to call certain witnesses is strategic and generally should not be second-guessed. Moreover, the trial court found that K.R. testified only with respect to her knowledge before undergoing hypnosis. And, with respect to the party guests,

Petitioner does not identify a single witness his counsel could have called, much less adduce evidence that any of these witnesses' testimony would have been exculpatory or impeached K.R.'s credibility. Indeed, for all the Court knows, these witnesses would have confirmed K.R.'s account, further damaging Petitioner's defense. In light of this, Petitioner has failed to proffer support that counsel acted unreasonably.

E.   Failure to Introduce a Video Tape

Petitioner also argues that his counsel was ineffective in failing to introduce a video tape that, Petitioner claims, showed someone else walking away from the area where K.R.'s car was found. Petitioner, however, presents no evidence that the tape depicted someone besides himself. And, without such evidence, Petitioner cannot support his claims that his counsel erred – or that this alleged error amounted to Constitutionally ineffective assistance of counsel.

VI.  Petitioner's DNA Evidence Claims

Petitioner's new claims, concerning the failure to obtain DNA testing on the hair found in the victim's pubic combing, are similarly without merit. Petitioner's sixth ground for relief alleges that New York violated his federal due process rights by refusing to perform post-conviction DNA testing on the hair under a state statute, N.Y. C.P.L. § 440.30(1-a). However, in District

Attorney's Office for the Third Judicial Dist. v. Osborne, __ U.S. __, 129 S. Ct. 2308, 2322, __ L. Ed. 2d __ (2009), the Supreme Court held that convicted criminals have no federal "substantive due process right" to post-conviction DNA testing.  And the Supreme Court likewise found no fault with Alaska's procedural due process used to decide when convicted criminals may obtain post-conviction DNA testing.  Id. at 2320-2321.  In this regard, the Alaskan procedural due process protections that the Supreme Court found permissible in Osborne are, if anything, less friendly to convicted criminals than the New York procedures at issue here.  Alaska afforded rights to post-conviction DNA testing only if the evidence was "newly available . . . diligently pursued, and . . . sufficiently material."  Id. at 2320.  New York's Second Department, on the other hand, did not inquire into whether Petitioner's requested DNA testing was "newly available" or "diligently pursued."  See People v. Fuentes, 44 A.D.3d 871, 871, 842 N.Y.S.2d 923, 923 (2d Dep't 2007).  Instead, it required only that Petitioner show a "reasonable probability that the verdict would have been more favorable to him had the DNA test results been admitted into evidence at trial" – and denied Petitioner's request for failing to show this required "reasonable probability."  Id. Thus, Petitioner's due process rights were not violated by New York's refusal to afford him post-conviction DNA testing.

24

Petitioner's claim for prosecutorial misconduct is also without merit. As Petitioner concedes, the parties entered into a stipulation before trial agreeing "that one questioned hair that was observed in the pubic hair combing, was recovered for analysis and not found to be consistent with the hair of Jesus Fuentes." (Pet. Sup. Br. at 12). This stipulation additionally indicated that "further testing was necessary, but was not done." (<u>Id.</u>). Petitioner claims that the prosecution committed misconduct in failing to inform his counsel that the "analysis" performed on the hair consisted of visual inspection (which determined that the stray hair did not belong to Petitioner or the other male suspects) rather than DNA testing. (Pet. Supp. Br. at 28). But nowhere does the stipulation say that "DNA testing" was performed. Rather, consistent with the facts, the stipulation said only that "analysis" (such as visual inspection) was done, and that "further testing was necessary, but was not done." Nothing in that stipulation suggests that Petitioner's counsel believed that DNA testing had been performed. Indeed, if anything, the fact that "further testing was necessary, but was not done" strongly implies that Petitioner's counsel knew that DNA testing had <u>not</u> been done. Thus, Petitioner has failed to show that the prosecution "misled" anyone.

Petitioner also argues that the prosecution committed

misconduct when, during summation, it argued to the jury that the hair "doesn't belong to anyone else that would have any evidentiary value here." (Pet. Supp. Br. at 24). According to Petitioner, in so doing the prosecution implied that the hair belonged to Petitioner. But the prosecution's argument said nothing of the sort. Indeed, through the stipulation, the prosecution expressly agreed that the hair <u>did</u> <u>not</u> belong to Petitioner. The prosecution's argument was that it also did not belong to "anyone else that would have evidentiary value," <u>i.e.</u>, any of the other possible suspects. Rather, it belonged to a mystery man that was not identified. Once again, the prosecution committed no misconduct by speaking the truth.

Petitioner's gateway claim is likewise without merit. In <u>Schlup v. Delo</u>, 513 U.S. 298, 315, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995), the Supreme Court held that a claim of "actual innocence" can create a "gateway" that enabled an otherwise procedurally barred claim to be considered on the merits. However, in order to create this gateway, a prisoner must show that the trial "probably resulted" in the conviction of one who is actually innocent. <u>Id.</u> at 325-327. Here, Petitioner fails to meet that high burden. DNA testing on the hair would not establish Petitioner's innocence. At most, it would further support what was already <u>de</u> <u>facto</u> stipulated to the jury: that, in addition to

Petitioner having had intercourse with K.R. (as established by DNA evidence linking the semen found on K.R.'s bed-sheet to Petitioner), someone else probably had some kind of intimate contact with her as well. Similarly, although Petitioner claims that the trial testimony of Robert Baumann and Donald Dollar was exculpatory, it was nothing of the sort. Baumann explained why some of the semen found in K.R. had degraded to the point where it could not be analyzed through DNA testing. And Dollar testified about where Petitioner left his victim. Far from showing that Petitioner was "probably" innocent, their testimony supported Petitioner's conviction.

Finally, Petitioner's counsel was not ineffective in failing to submit the hair for DNA testing. As discussed above, through stipulation, Petitioner's counsel had already proved to the jury that the hair did not belong to Petitioner, but rather to someone else who K.R. likely had intimate contact with. Even if DNA evidence had fixed a name on this mysterious sexual contact, it could not have overcome the overwhelming evidence of Petitioner's guilt: the DNA evidence linking Petitioner to the semen found on K.R.'s bed-sheet, and Petitioner's pawning of K.R.'s possessions.

E.   <u>Summary</u>

In sum, Petitioner was provided with effective counsel who implemented a reasonable trial strategy. Petitioner has failed

to support his claims that his counsel erred and acted unreasonably. However, even assuming his counsel did err, he has failed to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. It does not appear that any strategy executed by counsel would have overcome the evidence implicating the Petitioner. Consequently, because the state court's finding that the Petitioner received effective assistance of counsel was neither contrary to, or involving an unreasonable application of, clearly established federal law, federal habeas relief on this claim is denied. Williams v. Taylor, 529 U.S. 362, 404-05, 120 S. Ct. 1495, 1519, 146 L. Ed. 2d 389 (2000); 28 U.S.C. § 2254(d)(1).

VII. Sufficiency of the Evidence

"The Due Process Clause of the Fourteenth Amendment prohibits conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged.'" Einaugler v. Supreme Court of the State of New York, 109 F.3d 836, 840 (2d Cir. 1997) (quoting In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073, 25 L. Ed. 2d 368 (1970)). The Petitioner is only "entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a

28

reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92, 61 L. Ed. 2d 560 (1979). The evidence must be viewed "in the light most favorable to the prosecution." Id. at 319. When challenging the sufficiency of the evidence in a state criminal conviction, petitioner "bears a heavy burden." Einaugler, 109 F.3d at 840. Additionally, "the government receives the benefit of having all permissible inferences drawn in its favor." Dixon v. Miller, 293 F.3d 74, 81 (2d Cir. 2002) (citing United States v. Martinez, 54 F.3d 1040, 1042 (2d Cir. 1995)). Furthermore, the verdict can "be based entirely on circumstantial evidence." Martinez, 54 F.3d at 1043.

There is considerable evidence when viewed in a light most favorable to the prosecution that supports the jury's finding that the Petitioner was guilty beyond a reasonable doubt. Petitioner's DNA was found at the crime scene on the victim's bed-sheet. Also, Petitioner was found in possession of a pawn receipt for the victim's jewelry which was stolen from her apartment the night of the attack. Moreover, the jewelry store owner identified Petitioner as the individual attempting to sell the victim's jewelry.

Given the considerable evidence that supports the Petitioner's guilt in the crimes charged, Petitioner fails to meet the demanding standard for overturning the jury's verdict. Thus,

Petitioner's claim for insufficiency of evidence is without merit.

CONCLUSION

For the foregoing reasons, Fuentes's petition for writ of habeas corpus is DENIED in its entirety, and the petition is dismissed.

SO ORDERED

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:  Central Islip, New York
        August  5 , 2009